# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| REBECCA BOGIE | * |
| | * |
| v. | * Civil No. JKS 11-3700 |
| | * |
| CAROLYN W. COLVIN | * |
| Acting Commissioner of Social Security | * |
| | * |

## MEMORANDUM OPINION

Plaintiff Rebecca Bogie brought this action pursuant to 42 U.S.C. § 405(g) for review of the Social Security Administration's (SSA) final decision denying her claim for disability insurance benefits (DIB) under the Social Security Act, 42 U.S.C. §§ 401 *et. seq.* (the Act). Both parties' motions for summary judgment are ready for resolution, *see* ECF Nos. 13 and 16, and no hearing is necessary. *See* Local Rule 105.6. For the reasons set forth below, Bogie's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted.

1. **Background.**

Bogie filed an application for DIB on September 12, 2007, with an alleged disability onset date of November 30, 2006. R. 150. Her claim was denied initially on February 25, 2008, R. 79, and upon reconsideration on June 4, 2008. R. 87. Bogie then filed a written request for a hearing before an Administrative Law Judge (ALJ), and two hearings were held on December 9, 2009[1] and February 3, 2010. R. 64-76, 34-63. C.J. Sturek, the ALJ who presided over the second hearing, issued a decision on February 25, 2010, finding that Bogie was not disabled under the Act because she retained the residual functional capacity (RFC) to perform jobs available in significant numbers in the national economy. R. 29. The Appeals Council subsequently denied Bogie's request for review on October 25, 2011, and the ALJ's decision

---

[1] Bogie failed to appear at the initial hearing.

became the final, reviewable decision of the agency. R. 1-3.

2. **ALJ's Decision.**

The ALJ evaluated Bogie's disability claim using the five-step sequential process described in 20 C.F.R. § 404.1520. At step one, the ALJ found that Bogie had not engaged in any substantial gainful activity since the alleged onset date of November 30, 2006. R. 21. At step two, the ALJ found that Bogie had the following severe medical impairments: residuals of cervical fusion for disc disease, lumbar disc disease, cervical radiculopathy, depression and anxiety. *Id.* At step three, the ALJ found that Bogie did not suffer from an impairment, or combination of impairments, listed in 20 C.F.R Part 404, Subpart P, Appendix 1. *Id.* At step four, the ALJ reviewed the record and determined that Bogie possessed the RFC to perform light work with some additional limitations, R. 22-23, and the ALJ found Bogie unable to perform any of her past relevant work. R. 28. At step five, given Bogie's age, high school education, work experience, and RFC, the ALJ considered the testimony of the vocational expert (VE) and concluded that Bogie is eligible for work that exists in significant numbers in the national economy. *Id.* Accordingly, the ALJ found that Bogie was not disabled as defined under the Act and denied her application for benefits.

3. **Standard of Review.**

The role of this court on review is to determine if the ALJ applied the correct legal standards in finding Bogie not disabled, and if substantial evidence supports that conclusion. 42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995). Substantial evidence requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and quotation marks omitted). To be substantial, there must be more than a scintilla, but less than a preponderance, of

the evidence presented. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). This court may not try the case *de novo*, and will affirm a decision if it is supported by substantial evidence. *Id.* If conflicting evidence could cause reasonable minds to differ on whether or not the claimant is disabled, it is the ALJ's right and responsibility to make that determination. *Craig v. Chater*, 76 F.3d, 589 (4th Cir. 1996) (citing *Walker v. Bowen,* 834 F.2d 635, 640 (7th Cir. 1987)).

## 4. Discussion.

Bogie argues that the ALJ failed to properly evaluate the opinions of her treating physician, Dr. Kafaji, in several ways. First, Bogie contends that the ALJ should have included limitations in the RFC assessment related to her ability to stand and walk. ECF No. 13 at 8. In Dr. Kafaji's March 12, 2008 opinion, he noted that Bogie had a "[l]imited ability to [perform] prolong[ed] sitting, standing, walking, bending [or] twisting." R. 370. However, Dr. Kafaji did not specify how Bogie's activities should be limited and Dr. Kafaji himself had concluded on December 13, 2007 that she could stand and walk frequently. R. 463. Moreover, Bogie testified that "walking helps" alleviate her pain and that she can walk for a mile without stopping. R. 49. Finally, state agency physician Dr. Hakkarinen concluded that Bogie could stand and/or walk for a total of 6 hours in an 8-hour workday, R. 363, and Dr. Nakhuda, another state agency physician, concluded the same thing. R. 387. The ALJ properly excluded limitations on walking and standing from the RFC and, regardless, Bogie fails to explain how the ALJ should have tailored the RFC differently.

Second, Bogie objects to the ALJ's conclusion that Dr. Kafaji's opinions regarding her postural limitations were inconsistent with the evidence of record. ECF No. 13 at 8. Postural limitations include one's ability to climb, balance, stoop, kneel, crouch and crawl. Dr. Kafaji concluded that Bogie could *never* bend, squat, kneel or crawl, R. 463, whereas the ALJ found

3

that she could *occasionally* bend, kneel, crouch and crawl. R. 23. The ALJ referenced Bogie's testimony that she can perform light housework, drive a vehicle, visit her family, walk for a mile without resting, garden and perform all activities independently. R. 22-24. The ALJ also noted the evaluation of Dr. Robert Timmons on August 24, 2007 who found that Bogie ambulated without difficulty. R. 25, 271. On May 5, 2007, Bogie told her physical therapist that she had been pulling weeds while in the sitting position, planting rose bushes, digging holes and moving for most of the day. R. 322-23. Dr. Hakkarinen and Dr. Nakhuda both concluded that Bogie could occasionally balance, stoop, kneel and crouch, although Dr. Hakkarinen concluded that she could never crawl. R. 364, 388. The ALJ's decision to assign minimal weight to Dr. Kafaji's opinions regarding Bogie's postural limitations is supported by substantial evidence.

Next, Bogie argues that the ALJ ignored Dr. Kafaji's conclusion that she was unable to push or pull or reach above mid chest level. However, Bogie herself testified that she can push and pull drawers and doors without problems, R. 50, and neither Dr. Kafaji nor Bogie cite to any clinical evidence to support the conclusion that she is limited in pushing, pulling or reaching. *See Thompson v. Astrue*, 442 Fed. Appx. 804, 808 (4th Cir. 2011) ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."). The ALJ did not err by withholding pushing, pulling and reaching from Bogie's RFC assessment.

In addition, Bogie argues that the ALJ failed to consider the factors listed in 20 C.F.R. 404.1527(d) in deciding to assign minimal weight to Dr. Kafaji's opinion. ECF No. 13 at 9-10. If the ALJ finds that the treating physician's opinion is not entitled to controlling weight, the following factors must be applied to determine its proper weight: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment

4

relationship; (3) the supportability of the opinion with relevant medical evidence; (4) its consistency with the record as a whole; (5) whether it is the opinion of a specialist regarding his or her area of specialty; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(6). "A formulaic recitation of the factors is not required so long as it is apparent that the ALJ was aware of and considered each one." *Carter v. Astrue*, No. CBD-11-2980, 2013 U.S. Dist. LEXIS 116856, *26 (D. Md. Aug. 19, 2013) (citation omitted).

As a preliminary matter, the ALJ did not assign minimal weight to the entirety of Dr. Kafaji's opinion testimony. In his December 10, 2007 report, Dr. Kafaji concluded that Bogie could exert herself at the light exertional level,[2] exerting up to twenty pounds of force occasionally and up to ten pounds of force frequently. R. 463. The ALJ noted that this finding by Dr. Kafaji was consistent with the evidence of record and Bogie's RFC. R. 26. The only conclusions of Dr. Kafaji's that the ALJ discredited were his assessments of Bogie's postural limitations and his opinion that she was unable to work. The court has already concluded that the ALJ properly discredited Dr. Kafaji's conclusions with regard to Bogie's postural limitations, and, as this court has held on numerous occasions, "[t]he determination of whether the claimant meets the statutory definition of disability is reserved to the Commissioner, even when a medical source opinion includes a statement that a claimant is 'disabled' or 'unable to work.'" *Miller v. Callahan*, 964 F. Supp. 939, 951 (D. Md. 1997) (citing 20 C.F.R. §§ 404.1527(e)(1) and 416.927(e)(1)) and *Laws v. Celebrezze*, 368 F.2d 640, 644 (4th Cir. 1966)).

To be sure, Bogie is correct that the ALJ did not discuss all of the factors listed in 20

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 CFR 404.1567(b)

5

C.F.R. § 404.1527, specifically, the length and frequency of the treatment relationship, the nature and extent of the treatment relationship, and whether the opinion was issued by a specialist regarding his area of specialty. The ALJ did note, however, that Dr. Kafaji was Bogie's treating physician and discussed in detail his December 10, 2007 and October 23, 2008 evaluations. He explained why Dr. Kafaji's assessment of Bogie's postural limitations was inconsistent with the evidence of record—most notably, because it conflicted with Bogie's testimony and the testimony of the two state agency consultants, Dr. Hakkarinen and Dr. Nakhuda. The ALJ also recited Dr. Kafaji's various opinions relating to Bogie's postural limitations—i.e., that she could occasionally climb stairs, but could never bend, squat, kneel or crawl—but ultimately concluded, based on the other evidence of record, that she could *occasionally* bend, stoop, kneel, crouch and crawl. R. 23. In sum, although the ALJ did not explicitly enumerate all of the relevant factors, his analysis was sufficient because he explained why and which parts of Dr. Kafaji's opinions received minimal weight. In any event, Bogie has failed to point out how she was prejudiced by the alleged faulty analysis, and any error in failing to explicitly address the § 404.1527 factors was harmless. *York v. Astrue*, Civ. No. TMD 11-902, 2013 U.S. Dist. LEXIS 71960, *9-12 (D. Md. May 20, 2013) ("While the ALJ could have been more specific in his findings, the Court finds that his overall discussion in his opinion supports his findings."); *Morgan v. Barnhart*, 142 Fed. Appx. 716, 722-23 (4th Cir. 2005) ("Even assuming, however, that this opinion is a medical opinion due special weight under the treating-physician rule, any error in failing to credit this opinion was harmless.").

Next, Bogie argues that the ALJ failed to properly evaluate the opinions of two certified nurse practitioners, Tracy McCloskey and Cheryl Wyatt. ECF No. 13 at 11. She argues that the ALJ failed to identify how their opinions were inconsistent with the record and failed to consider

the proper factors in evaluating their opinions. First, Bogie fails to mention any specific limitation that should have been incorporated in the RFC based on either of the nurse's evaluations. Second, because a certified nurse practitioner is considered a non-acceptable medical source, it was within the ALJ's discretion to determine what weight to accord the nurses' opinions. *See Rhoten v. Comm'r of Soc. Sec.*, Civ. No. KLL 11-571, 2012 U.S. Dist. LEXIS 125673, at *39-40 (S.D. Ohio Sept. 5, 2012) ("Because a certified nurse practitioner is not an 'acceptable medical source,' it was within the ALJ's discretion to determine what weight to accord [the nurse practitioner's] opinions based on all the evidence in the record."). Third, the court sees only minor discrepancies between the nurses' assessments and the ALJ's assessment. Unlike the ALJ, Ms. McCloskey opined that Bogie could never kneel, crawl, push or pull. R. 465-66. While Ms. Wyatt agreed with Ms. McCloskey that Bogie could not kneel or crawl, she disagreed with Ms. McCloskey in concluding that she could *frequently* push or pull. R. 487-88. Importantly, as discussed earlier, Bogie cannot cite to a single piece of clinical evidence to support the conclusion that she is limited in pushing, pulling, kneeling or crawling. To the contrary, the ALJ asked Bogie if she could use her "arms and hands to push and pull something," e.g., "to open a door or drawer [and] close them," and she responded that she could perform those tasks. R. 50. She also testified that she could reach her knees and maybe her ankles from a standing position, as well as bend her knees effectively, *id.* at 50-54, and that she loves to garden, which involves pruning flowers and pulling up weeds while riding on a gardening cart. *Id.* at 54, 58. The ALJ's analysis adequately shows why he assigned minimal weight to the nurse practitioners' opinions.

Bogie's contention that the ALJ failed to conduct the "required analysis" of the nurses' opinions as set out in 20 CFR 404.1527(d) and 416.927(d) is also erroneous. As mentioned

7

earlier, SSR 06-03p provides that nurse practitioners are not "acceptable medical sources." The ruling also states that "the factors in 20 CFR 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from 'acceptable medical sources,'" but that "these same factors *can be* applied to opinion evidence from 'other sources,'" including nurse practitioners. *Id.* (emphasis added). Thus, the ALJ *may* apply the factors in 20 CFR 404.1527(d) and 416.927(d) to opinions conducted by nurse practitioners, but is not required to do so.

Finally, Bogie argues that the ALJ's hypothetical question to the VE should have included Dr. Kafaji's limitations relating to her ability to stand, walk, push, pull and reach and the nurse practitioners' limitations relating to her ability to perform simple grasping, reach, push, pull, perform fine manipulation, feel, stand and walk. ECF No. 13 at 15. "[A] hypothetical question is unimpeachable if it '*adequately reflects*' a residual functional capacity for which the ALJ had sufficient evidence. *Fisher v. Barnhart*, 181 F. App'x 359, 364 (4th Cir. 2006) (emphasis in original) (citation omitted). Thus, "it is the claimant's functional capacity, not his clinical impairments, that the ALJ must relate to the vocational expert." *Id.* Here, the ALJ's hypothetical question to the VE was appropriate because, as previously discussed, the ALJ found that the relevant portions of the opinions of Dr. Kafaji, Ms. McCloskey and Ms. Wyatt were not supported by the evidence of record. Critically, Bogie's own testimony relayed that: walking helps alleviate her pain and she can walk for a mile without stopping, R. 49, she can push and pull things, R. 50, she can grip things and hold onto pens, pencils and utensils without trouble, R. 52, 55, she enjoys sewing for approximately two hours per day, R. 211, she has no problems bathing or dressing herself, R. 55, and she gardens in half hour increments by pruning bushes and pulling up weeds, R. 57. This evidence counters the suggestion that the ALJ should have included standing, walking, pushing, pulling, reaching, grasping, feeling or performing fine

manipulation as part of the list of limitations in his hypothetical question to the VE. Instead, the ALJ properly asked the VE whether jobs were available that involved only occasional "balancing, bending or stooping, kneeling, crouching or squatting, as well as crawling." R. 59. Accordingly, the ALJ's hypothetical question to the VE was supported by substantial evidence.

**5. Conclusion.**

Substantial evidence supports the ALJ's conclusion that Bogie was not disabled under the Act. Bogie's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted.

Date: January 3, 2014                                         /S/
                                                     JILLYN K. SCHULZE
                                                     United States Magistrate Judge